## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

ANTHONY THOMAS HUGHES,

    Petitioner,

    v.

WARDEN CASEY CAMPBELL,

    Respondent.

Civil Action No.: GJH-20-1071

## MEMORANDUM OPINION

Respondent filed a Limited Answer to the above-entitled Petition for Writ of Habeas Corpus asserting that the petition must be dismissed because it is untimely. ECF No. 3. The Court granted Petitioner Anthony Thomas Hughes an opportunity to file a Response to address the timeliness of the Petition and discuss whether equitable tolling of the limitations period applies. Petitioner filed a Response to the Limited Answer. ECF No. 5. No hearing is necessary to resolve the issues presented. *See* Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2018); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. §2254(e)(2)). For the reasons that follow, the petition shall be dismissed and a certificate of appealability shall not issue.

## I.    Background

Hughes was prosecuted on a 25-count indictment in the Circuit Court for Carroll County, Maryland in connection with the attempted murder of his ex-wife and others. The Court of Special Appeals summarized the facts of the underlying crime as follows:

> On [the] evening [of December 31, 2002], Hughes broke into the home of his ex-wife, Ellen Redifer, in Westminster, Carroll County. Redifer, her daughter, Arianna Hughes and Arianna's boyfriend, Sean Malay, fled from the house, and were pursued by Hughes. Hughes caught Redifer and struck her multiple times in the head, neck and upper chest with a large framing hammer. Malay attempted

to intervene but was threatened with the hammer. Redifer's neighbor, John Glover, responded and pulled Hughes away from Redifer, and he too was struck with the hammer. Hughes and Glover grappled, and Hughes cut Glover in the back of the head with a box cutter knife. At that point Hughes ran from the scene but returned and attempted to run down all of them with his car. Hughes then fled to a relative's house in West Virginia, where he was later arrested. Redifer survived the critical injuries sustained in the attack.

*Hughes v. State*, 243 Md. App. 187, 192 (2019), *cert. denied,* 467 Md. 273 (2020).

On July 21, 2003, Hughes stood trial on an agreed statement of facts and the court found him guilty on all counts. *Id.* "The court imposed a sentence of life plus 45 years' imprisonment" on January 27, 2004. *Id.* at 193, *see also* ECF No. 3-1 at 42-43.[1]

Hughes filed an appeal to the Court of Special Appeals alleging that he had not knowingly and voluntarily waived his right to a jury trial. *Hughes*, 243 Md. App. at 193. The appellate court reversed his convictions and remanded the matter for a new trial. ECF No. 3-1 at 38-39.

On November 14, 2005, Hughes entered a guilty plea pursuant to a binding plea agreement. He agreed to plead guilty to five counts of the indictment: "Count 1 – attempted first-degree murder of Redifer; Count 7 – first-degree assault of the neighbor, John Glover; Count 11 – first-degree burglary; and to Counts 14 and 15 – second-degree assault of Arianna Hughes and Sean Malay, respectively." *Hughes*, 243 Md. App. at 193. "In exchange for the guilty plea the State agreed to ask for a sentence of 75 years' incarceration with all but 45 years suspended for the attempted murder count (Count 1). The remaining four counts (Counts 7, 11, 14 and 15) were to carry either suspended or concurrent sentences." *Id.*

On February 10, 2006, Hughes was sentenced as follows: Count 1: 75 years with all but 45 years suspended; Count 7: 25 years consecutive, all suspended; and for the remaining three counts

---

[1]     Page numbers for documents filed with this Court reference the pagination assigned by the Court's electronic docketing system and may not match the page numbers provided by counsel in the pleadings filed.

Hughes received lesser, concurrent sentences.[2]  ECF No. 3-1 at 21.  For the remaining 20 counts in the indictment the State entered a *nolle prosequi*.  *Id.* at 26-29.  Hughes did not file an appeal.

On March 13, 2006, Hughes filed a motion for modification of sentence which the Carroll County Circuit Court denied on March 23, 2006.  ECF no. 3-1 at 20-21.  Hughes filed no other pleadings in the case for more than six years.

On September 5, 2012, Hughes filed a motion to correct an illegal sentence, which the court denied on September 25, 2012.  ECF No. 3-1 at 18.

On October 17, 2012, Hughes filed what ostensibly was an application for leave to appeal the denial of his motion to correct illegal sentence; however, because his *pro se* pleading was inartfully entitled "Application for Leave to Appeal Denied the Motion to Correct Illegal Sentence" no action was taken on the pleading.  *See Hughes* 243 Md. App. at 194.

On February 10, 2016, a petition for post-conviction relief was filed on Hughes' behalf by counsel.  ECF No. 3-1 at 17.  A hearing was held on January 4, 2017 and on April 3, 2017, the circuit court issued a memorandum opinion and order granting in part and denying in part post-conviction relief and reconsideration of the motion to correct illegal sentence.  *Id.* at 12. Specifically, the circuit court vacated the guilty plea as to Count 7 for which a 25-year consecutive, suspended sentence that was imposed because it breached the terms of the plea agreement and ordered a new trial as to that count.  *Hughes*, 243 Md. App. at 195.

Hughes filed an application for leave to appeal the partial denial of post-conviction relief and a notice of appeal the partial denial of reconsideration of the motion to correct illegal sentence. The State entered a *nolle prosequi* as to Count 7 at the initial appearance for the new trial ordered by the post-conviction court.  *Hughes*, 243 Md. App. at 195.  Hughes contended on appeal that the

---

[2]       The aggregate sentence imposed was 100 years, suspend all but 45 years.

remedy chosen by the post-conviction court was improper and argued that the post-conviction court should have reviewed "what the plea agreement contemplated and whether the State and the trial court complied with its terms." *Id.* at 198.  In the November 7, 2019 reported opinion, the Court of Special Appeals affirmed the post-conviction court's decision. *Id.* at 191-2.  Certiorari review was denied by the Court of Appeals on February 28, 2020. *Hughes v. State*, 467 Md. 273 (2020).

Hughes filed his federal habeas petition on April 14, 2020, the date he signed the petition. ECF No. 1 at 14.  Although the petition contains very little in the way of argument or a list of claims asserted, it appears that Hughes is attempting to raise the same claim raised in his post-conviction appeal: that all of his sentences should have been vacated and a new trial ordered due to their illegality. *Id.*

## II.    Standard of Review

A one-year statute of limitations applies to habeas petitions in non-capital cases for a person convicted in a state court. *See* 28 U.S.C. § 2244(d).  This section provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of-
>
>> (A)    the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B)    the date on which the impediment to filing an application created by State action in violation of the constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D)     the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2)     The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

"[T]he one year limitation period is also subject to equitable tolling in 'those rare instances where -- due to circumstances external to the party's own conduct -- it would be unconscionable to enforce the limitation against the party and gross injustice would result.'" *Hill v. Braxton*, 277 F.3d 701, 704 (4th Cir. 2002) quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). To be entitled to equitable tolling, a federal habeas petitioner must establish that either some wrongful conduct by Respondents contributed to his delay in filing his petition or that circumstances that were beyond his control caused the delay. *See Harris*, 209 F.3d at 330.

**III.    Discussion**

**A.      Statutory Tolling**

As noted, Hughes' conviction was reversed by the appellate court and "the limitations period under § 2244(d)(1)(A) runs from the judgment entered upon resentencing." *Woodfolk v. Maynard*, 857 F.3d 531, 542 (4th Cir. 2017).  Hughes was resentenced pursuant to a guilty plea on remand to the Circuit Court on February 10, 2006.  Therefore, the date on which the judgment in Hughes' case became final under 28 U.S.C. 2244(d)(1)(A) was March 13, 2006, the date on which the time for seeking appellate review of the guilty plea expired.  *See* Md. Rule 8-204(b)(2)(A) (application for leave to appeal must be filed within 30 days of judgment).  The one-year filing period for seeking federal habeas relief expired on March 13, 2007.

No intervening post-conviction proceedings occurred during the one-year time-frame, therefore the limitations period was not tolled pursuant to 28 U.S.C. § 2244(d)(2). Nor do any of the other exceptions listed in § 2244(d)(1) apply to Hughes' petition. Thus, absent a basis for equitable tolling,[3] the petition is subject to dismissal.

**B.    Equitable Tolling**

Hughes asserts in his petition that under Maryland law he had ten years from the date of his conviction to seek post-conviction relief and did not know there was a one-year filing deadline for federal habeas corpus petitions. ECF No. 1 at 12. He notes that he has no working knowledge of law and procedure and asks that the delay in filing his petition be excused. *Id.* Hughes states in his response to this Court's Order providing him an opportunity to demonstrate that he was entitled to equitable tolling of the statute of limitation that the law library at Roxbury Correctional Institution has been closed since April of 2020. ECF No. 5. His response is dated November 15, 2020. *Id.*

Equitable tolling is only available in "'those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" *Rouse v. Lee,* 339 F.3d 238, 246 (4th Cir. 2003) (quoting *Harris*, 209 F.3d at 330); *see also Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Hill*, 277 F.3d at 704. Thus, a petitioner is entitled to equitable tolling if he shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace*,

---

[3]      Given the procedural history of the underlying criminal case, any resort to an actual innocence claim for the purpose of establishing a gateway to consider the untimely petition is factually unsupported. *See McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013) (colorable actual innocence claim requires a showing that "new evidence shows 'it is more likely than not that no reasonable juror would have convicted'" the petitioner.)

544 U.S. at 418). Hughes' lack of knowledge regarding the law is unavailing. As observed by the

*Harris* court:

> "As a discretionary doctrine that turns on the facts and circumstances of a particular case, equitable tolling does not lend itself to bright-line rules." *Fisher v. Johnson,* 174 F.3d 710, 713 (5th Cir.1999). The doctrine has been applied in "two generally distinct kinds of situations. In the first, the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant. In the second, extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time." *Alvarez– Machain v. United States,* 107 F.3d 696, 700 (9th Cir.1996) (citation omitted). But any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes. To apply equity generously would loose the rule of law to whims about the adequacy of excuses, divergent responses to claims of hardship, and subjective notions of fair accommodation. We believe, therefore, that any resort to equity must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.

*Harris*, 209 F.3d at 330 (4th Cir. 2000) (finding lawyer's mistaken reading of § 2244(d)(1)

inadequate to support equitable tolling). While Hughes' lack of knowledge may have made it

more difficult for him to comply with the limitations period, equitable tolling is reserved for

instances where the State has created extraordinary circumstances that make it impossible for the

petitioner to comply with the filing deadline. *See Miller v. N.J. State Dept't of Corrections*, 145

F.3d 616, 618 (3rd Cir. 1998) (tolling is appropriate when petitioner has "in some extraordinary

way . . been prevented from asserting his or her rights"). Importantly, Hughes provides no facts

to suggest his diligent pursuit of his claims during the limitations period or during the six-year

hiatus after it expired. The limitations on access to the prison law library and Hughes' lack of

knowledge regarding the one-year filing deadline does not suffice to support a finding that he is

entitled to equitable tolling. Accordingly, the petition shall be dismissed as untimely.

**C.      Certificate of Appealability**

When a district court dismisses a habeas petition solely on procedural grounds, a certificate of appealability will not issue unless the petitioner can demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Rose v. Lee,* 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)).   Hughes may still request that the United States Court of Appeals for the Fourth Circuit issue such a certificate.  *See Lyons v. Lee*, 316 F.3d 528, 532 (4th Cir. 2003) (considering whether to grant a certificate of appealability after the district court declined to issue one).

A separate Order follows.

November 3, 2021
Date

GEORGE J. HAZEL
UNITED STATES DISTRICT JUDGE